The next case on the docket is number 520112 Hoey v. Hoey. Arguing for the appellant James Hoey is Lane Harvey. Arguing for the appellee Jennifer Hoey is Charles McGuire. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these arguments. The court will now hear case number 520-0112 Hoey v. Hoey. The court would note that Justice Cates originally was assigned to this panel but has recused herself. The arguments are being recorded and another justice will be assigned to the case and will have access to those arguments and will listen to them and read the briefs and participate in this decision. For today Justice Welch and I will be here to hear the case and that new judge will be assigned at a later time. The uh appellant may proceed. Thank you your honor. May it please the court. This case as I'm sure the court is aware arises. And you're you're Morris Lane Harvey is it? I am. I'm sorry your honor. I am Lane Harvey and I represent the appellant. This case as I'm sure the court is aware arises out of an order of protection that was entered March 12th of last year related to events that allegedly occurred on January 20th. In passing on this case it is important that the court be aware of the long history of antagonism that has existed between the petitioner Jennifer Hoy and the respondent Matthew Hoy. The point of the matter is and in considering this case it becomes important to note that because that's what puts this case in context. I would note initially and these things are in the record and are a part at a minimum of Dr. Kosmicki's evaluation. In 2016 Jennifer Hoy took the child to a counseling facility called Centerstone. The Centerstone records are in evidence and on the first page of the Centerstone record Jennifer Hoy announced that her intention at the counseling was to limit Matthew's time with the child. That is on the first page of the record in the forensic evaluation from Dr. Kosmicki which is in evidence and it is significant that it is unrebutted and frankly uncontested. Dr. Kosmicki determined a number of things about Jennifer Hoy and Parker Hoy that relate directly to the foundation from which this case arises. First, Dr. Kosmicki determined that it was Jennifer Hoy's goal to reduce Matt's time with Parker. Secondly, he determined that in the course of Jennifer dealing with Parker that she pressured Parker to report negative things to her about her father so she could tell her attorney. Third, the evaluation determined that Parker was in the word that Dr. Kosmicki used was allied was allied with his mother and was aware that he received secondary gains from saying things to his mother of a negative nature about his father. The circumstances are and the evidence is certainly from Dr. Kosmicki's testimony that after each visit with the father, the mother questioned the child about what happened and essentially encouraged him to say these kinds of negative things. So it is against that backdrop that the facts of this case arise. This case arose on an alleged event from January 20th of last year. At that time, Matt's time with the child was that he had four hours on a Monday and four hours on a Tuesday. On that day, Matt and his mother Denise picked Parker up between 4 and 4.15 p.m. for a four-hour visit. It was during that four-hour visit that the petitioner claims that Matt choked his mother in the presence of the child and abused the child by so doing. Based upon that, she goes into court on the following day to get an ex parte order of protection. The trial court entered an ex parte order of protection. There was a hearing on a plenary order of protection and the court entered an order on March 12, 2020. And I say entered an order, I think a couple of things should be noted. First of all, the order that was allegedly entered dated March 20 or March 12 has never been signed by the judge. The copy in the court file or any copy that's been circulated bears Judge Dinn's signature. The question may arise as to whether under that circumstance, the order is even valid, but nevertheless, that's the case. The order, as it were, is a printed form order in which essentially Judge Dinn goes through and checks off boxes. And then that is the order that was filed in the case. Now, it is from that order that this appeal arises. There are a number of things, as I say, that should be noted in the leading up to this. First, obviously, the reporter of the event was Jennifer and Matt is worthy of note in that, as I indicated previously. When Mr. Harvey, yes, that order does not allow any visitation, whatever, including supervised. That's correct. That's correct. And for that order, Judge, what Judge Dinn said in the record as he was making his ruling is that we could file a separate petition for something. But that order on its face precludes contact between the child and his father for the two-year period. The circumstances giving rise to this again. How long has it been since the child has had contact with his father? Since January of last year. So it's now a year and a quarter roughly. And again, the circumstances claimed in this were first that Matt had allegedly choked his son. Detail in our brief, and I don't want to recount all of that, but the short version of this is essentially this. Matt Hoy, Jennifer Hoy and Jim Hoy testified before the court. Those are the three adults who were present. Jennifer and Jim are Matt's parents. Denise, pardon me. I'm Testimony in the case was from both Denise, Matt, and then as well as Jim, where all three were in the house from the period of time of roughly 4.15 to 5 o'clock or so. The event allegedly occurred at 4.30. All three of them testified that the alleged event never occurred. The only witness who asserts that any such an event occurred was the child. The significance of the child, and we have detailed in this in our brief, and I would refer you beginning at page 34 of our brief, is the child has told three inconsistent, mutually exclusive stories of what happened. And so I would submit to the court that we begin with the fact that the child's versions, both in terms of court testimony, the purported amended petition that was never allowed but was filed and signed, and the original petition are inconsistent about what allegedly happened. The significance is that the testimony of Denise, Jim and Matt are all consistent. And one of the things that I find ironic about the judge's ruling in this case, Your Honor, is the court questioned the credibility of Matt, Jim and Denise, because they all essentially stated the same thing. And the court concluded, well, they must have been prepped to do that. I would submit to the court that one of the things that this court might consider in determining why they recounted the same events is because the truth doesn't vary. And if they're telling the truth about the events that occurred, they likely would all be telling the same story. That unfortunately is something that the trial court never assumed. The next thing is we have pointed out, and again, this is in the brief in some detail, the inconsistencies of the child's testimony. And it's very difficult to understand how the court could determine that the child was credible because his various versions of events were inconsistent. I have a bit of difficulty understanding that. Well, what is our standard of review? Standard of review is a manifest way to the evidence. And the point I get to about that, Judge, is when the testimony of the folks, the adults in this case are consistent, and the testimony of the child is inconsistent, it's a bit difficult to determine that the manifest way to the testimony has been met. The other thing that I want the court to consider in this case, and we've dealt with this in our brief, and I would have the court take a look at its decision in the landman case, which we've cited. At no point in this case did the judge make the requisite findings to enter the order of protection. The court, and we detailed this in the brief, what the court did was it said he finds that by preponderance of evidence it's been proven or that he finds the child credible. What this court said in landman, and I would direct the court's attention to its opinion at 2019 ILAP 5th, 180, 137, paragraph 9. This court made a very clear finding in reversing an order of protection in that case, starting at paragraph 17, going through 18 and 19, that in order for the in this case, neither in the court's announcement from the bench, nor in the order of protection that was entered, were any of those findings made, and frankly, as I have at least reviewed the appellee's brief, I don't see where they assert that they have been, and I simply would ask the court to take a look at the record in this case, because the predicate for entering the order of protection was to make those findings, and that didn't happen. That in and of itself, according to this court's landman decision, is sufficient to set aside the order of protection. I simply would direct the court's attention to R214, where at the close of all of this, the only thing Judge Dinn said was, I find by preponderance of the evidence that the petition has proved. There was never a finding of fact that the events had occurred. The final error in this case is the court completely ignored the unrebutted testimony of Dr. Frank Kosmicki, who was the court-appointed forensic evaluator of the parties, and we have gone through in our brief in some detail the findings of Dr. Kosmicki's testimony, and it starts at page 30 of the brief, in which Dr. Kosmicki acknowledges and forecasts, frankly, that when Matt's visitation with the child started to return to normal, you could anticipate that Jennifer would instigate something in an effort to terminate or reduce Matt's time with the child. Significantly, in this case, Matt had, immediately prior to the first of the year, in the latter part of September, filed a motion for the complete restoration of his normal visitation. Significantly, two things happened. In October, she made a DCFS report against Matt, which was unfounded. Then, in January, she makes this complaint, in which we believe the evidence clearly establishes that what she's asserted didn't occur. So, the point that we get to is she has a motive for doing that. Dr. Kosmicki found it. The court did not consider anything in Dr. Kosmicki's testimony, and it's unrebutted. We believe that for the reasons that we stated, and one of the things we've indicated that is in the brief is that the allowance of the psychologist to testify as to the counseling requirements was a violation of the statute. But beyond that, the testimony didn't establish that the event alleged in the order of protection took place, and the trial court's finding the contrary was error. I believe my time has expired, Your Honor. Yes, it has, and you'll have an opportunity for rebuttal on counsel for Appley. You may proceed. Thank you, Your Honors. May it please the court, my name is Charles McGuire. I represent the petitioner in Appley in this matter, Jennifer Hoey, as next friend of her minor child, Matt Hoey's minor child, Parker. Judge, the dispute in this case does not arise from the many years of litigation that have occurred in this matter. This dispute arises from events that transpired on or about January 20th, 2020, not March of 2018 when Dr. Frank Kosmicki issued a report, not July of 2018 when Dr. Frank Kosmicki testified about that. Not earlier in 2019 when Parker Hoey saw Dr. Kellogg. The events forming the basis of the judge's order of protection were from an event that occurred on January 20th, 2020. That's what we're here on today, not the long and I will call it sorted history between the petitioner and the parties. Rather, what happened on January 20th was the following. Parker Hoey went for his two times a week, four hour visitations with his father. His father was intoxicated. Jennifer Hoey testified that his father was intoxicated. That testimony was unrebutted by anyone presented in evidence for the respondent. Parker Hoey saw his father throw his mother against the wall. He saw his father throw, that's again the grandmother Denise Hoey. He saw his father throw his grandmother against the wall, saw her get choked. She screamed and asked for help. He went and found his grandfather and sought that help. First of all, your honor, we want to address the appellant's contention that findings of fact were not issued here, that this is a situation analogous to landmines, what the appellant's saying in that, just check the box situation. That's false. That's just patently false. The trial court judge did, made about 20 or 30 minutes, I would say, lifetime of findings on the record from the bench in this matter. That translates into 12, 13 pages of transcribed written findings that the court has before it today. Importantly, and initially, I want to note that the trial court judge found the testimony of Matt Hoey, of Denise Hoey, and of James or Jim Hoey, the grandfather, all to be not credible. He provided a sub-rationale for that. Matt Hoey has an interest in continuing to see his children. Denise and Jim Hoey have no way to see the grandchild but for, through their visitation with have a vested interest. The judge specifically found, and I want to quote here, that their testimony was scripted. I made a suggestion to the trial court, I'll make it here again today, that when you look at the stories as outlined in the appellant's brief, as well as the trial court record, you will see just that it lacks the organicity that you typically see with true stories. These stories are contrived. Conversely, the judge took up the testimony of Parker Hoey himself, who told us what he saw on January 20th during his time with his dad. The judge found his story to be credible. He found specifically, and I quote again, he didn't lie, speaking of Parker. He believed the child was telling the truth. It's important here, your honors, for us to look at the fact that the judge did not just check boxes. The judge issued detailed factual findings, and I implore this court to read the judge's order on this. He finds that, number one, that he previously had found by a preponderance of the evidence, this is actually a case number 2017-OP. I don't want to cite back to that. Rather, I want to talk about what the judge said on the record in this case about that OP, that he had found by a preponderance of the evidence in that case, that an order of protection against Matt Hoey at that time would be sufficient. I think that satisfies the rear-looking prong of section 214c1, which looks at whether there were, that Matt Hoey's actions in the past had been sufficient to warrant entry of an order of protection by a preponderance. That's on the record. It's part of the judge's findings. Secondly, the judge makes findings with respect to Parker Hoey and his, excuse me, his continued safety and well-being. The judge specifically states Parker needs a break. Why does Parker need a break? Well, say a pretty good reason would be that his father's getting drunk and having an affair in front of his son. That's the long and the short of it, Your Honors. There's not need for, as it relates to the trial court record, I don't see a whole lot of need other than context to go over the last 10 years of litigation in this case. And while admittedly this case has been in court for almost every month in the last 10 years, opposing counsel and myself were not involved in the majority of that, but we are here before you now. Your Honors, you were not trial counsel? Your Honor, I was trial counsel beginning in late 2019. Your Honor, what I mean to say is that the divorce case in this matter that's been on since 2010, there have been several attorneys for both the petitioner and the respondent in this matter. There's been a GAL. There's been a lot of attorneys on and off over the years. All I mean to say is that we're just the most recent. Is there a GAL? Not currently, Your Honor. A GAL report was issued in the D case. I believe that was sometime in 2017 or 18. Neither myself nor opposing counsel have cited to that GAL's report here. However, there was one issue. Your Honor, I want to move on to the issue that the appellant raised, although they didn't argue here today, probably due to time constraints, has to do with Dr. Klipper's testimony. The appellant's brief explicitly states that there was error in the admission of Dr. Klipper's testimony on behalf of Parker Holt. We disagree with that strongly. Reason is twofold. Number one, the statute to which the appellee cites with respect to his testimony, this will be 755-607-6D, talks about confidentiality of counseling sessions. That applies in a case where the counselor is appointed by the court. There was one here. That's Dr. Kellogg. Dr. Kellogg didn't testify at the order of protection hearing. Dr. Kellogg's testimony is not being brought forth here on appeal. Dr. Klipper was, and is, remains in fact, Parker Holt's regular counselor. It is worth noting, Judge, that in the appellee's reply brief, they note that, well, it's a stretch to call him a counselor. Although admittedly, we're in a bit of a timing disadvantage as it relates to Dr. Klipper's involvement in this case, his introduction as a regular counselor. Prior to Klipper, Parker had been seeing for quite some time a Dr. Sears, Shelby Sears, who took a new job with DOC toward the end of 2019. This is why Parker Holt began seeing Dr. Klipper only very recently and near in time and temporal proximity to the order of protection. It's not because he was brought in as some kind of hired gun to provide a specific finding. It's because Parker lost his prior counselor to a new job and Jennifer found him a new one. That's it. In that statute 607D, 6076, excuse me. Again, subsection A states that it's intended to be implied in situations where the court is appointing a counselor, ordering counseling, or if there's parental education. Secondly, Judge, the rest of Dr. Klipper's testimony was not only to establish that Parker Hoy was an honest boy, which he is. The story he told about the events of January 20th are the truth. He's not lying and he has no motive to lie. It was additionally, Judge, we noticed him up prior to the hearing as a corroborating witness. The statute on that, Judge, which is 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A, that statute provides when a minor child has complained of any act of abuse, testimony is admissible in any civil proceeding from corroborating witnesses. It just so happened that Parker spoke to Dr. Klipper again in a very short order after the park because he could corroborate. Parker talked to him. Parker told him what happened that night. The story that Parker told Dr. Klipper is the same story he told the judge. Likewise, Your Honor, we had two other corroborating witnesses that were called in this case. One is Ms. Webb, who is Parker's aunt. She was on the telephone the time that Parker got in the vehicle, his mother's at the end of his parenting time. She heard Parker crying, heard Parker telling his mother the story of what happened. Additionally, Deputy Kyle Bacon was our first witness called. He corroborated again a mere hour, perhaps 90 minutes at most after Parker was dropped off with his mother. He presented with his mother at the Franklin County Sheriff's Department. This is important, Your Honors, because there was not enough time, frankly, for Parker Hoey and his mother to cook up this story that dad was drunk, which he called Jennifer Hoey in the middle of his parenting time, intoxicated. Jennifer Hoey testified that she believed he was intoxicated because he was slurring his speech and screaming at her. That was unrebutted in the trial court record. There wasn't enough time at 745 or about, and he was dropped off for them to come back and cook this story up. They went in to talk to Deputy Bacon immediately that evening. Judge, the appellant also argues that the manifest way the evidence standard dictates trial court's determinations to be overturned, we find that to be, again, patently false, not supported by the record whatsoever. As it relates to the sprawling narrative that opposing counsel paints in their appellate, in their appellate brief, it's just not what happened. The trial court judge has the benefit when making credibility determinations of being there, which Your Honors do not, as you know, obviously. The difference here is that, and I want to direct Your Honors to a good example that Judge Dinn uses. He took testimony from Jim or James Hoey, that's Parker's paternal grandfather. He found James Hoey to be not credible, and he found specifically while listening to his testimony and watching his testimony that Jim Hoey was staring daggers at his son throughout the entirety, that the tension you can cut with a knife, I may be paraphrasing, but I believe that's what the judge said. Again, this is why it's so important to be very, very careful and mindful when disturbing the trial. Is he saying that all on the record? Your Honor, yeah, that's cited in the trial court's opinion. If you'll look at that, I believe it's in R216 or R217 there, but if you'll review the judge's written opinion on that, he specifically makes a finding about how palpable the interaction between grandfather Jim Hoey and his son was while Jim Hoey was giving testimony. I think this, and I raise this, Judge Knott, it's in the record, but because it's a great example of why the appellate courts and reviewing courts should be mindful of disturbing the trial court judge's opinion in these expedited order of protection proceedings, because the trial court judge has benefit of being there, being alive, and being able to see the witnesses, being able to hear the inflections of their voice, being able to hear or watch who they're staring at, and in this case, I was there and so was Judge Dennedy, and Jim Hoey, it was palpable that you could tell that something was up. What was up? Well, these folks contrived the story in an attempt to avoid the loss of parenting time that's attendant to an order of protection. I want to touch briefly, Judge, on the last issue here, which the trial court, by motion made by us, agreed to take up with the case. At the time of the hearing, there was a DCFS indicated finding made of abuse or neglect against Matt Hoey, or I'm sorry, against Parker by Matt Hoey, that being the DCFS in this case determined that Matt Hoey either abused or was prepared at the time of the hearing, but had not been provided to either my client or to anybody outside of the DCFS due to their administrative rules and completing the process of sending these out. So, because the trial court had the benefit of this one-page written indication, which specifically says that Matt Hoey was indicated for abuse or neglect stemming from the events this night, but did not have the benefit of the full investigative report, we did make motion with the court to supplement the record and to add the full investigative report to the appellate court record of this matter. The reason for that is, again, this is another independent interview with Parker Hoey where he tells the same story that he told to his mother, that he told to Deputy Macon, that he told to to Dr. Klipper, and that he then told to one of the investigators, I believe her name is Rosemary. And I believe this court entered an order to take that with the case. Correct. That's correct, your honor, which is why I'm touching on it briefly here at the end of my argument. And we do believe that it's relevant. We believe it's credible. We believe that the evidence should be that this full investigative report would provide the court with additional context, which is helpful, I believe, in any situation. If you can get all the facts, I believe you should have all the facts. When a court passes judgment, you want the full story, not just about convenient facts, but most prejudicial facts to one side or the other. Although I'll be frank, I think the DCFS's report is pretty prejudicial to opposing counsel. That said, it's part of the full story. I believe that any court reviewing, original or otherwise, when possible, when within the bounds of the law, should have access to the full story of what the investigative report does entail. Mr. Harden. Yes. First of all, Judge, with regard to the DCFS report, the thing we should note is at the time of the hearing when Judge Dinn made his ruling, the DCFS record had not been compiled. I represent Matt in the appeal of that record, and the record had not been compiled at the time of the hearing. My question is, how in the world can the record, which did not exist at the time Judge Dinn decided what he decided, now support the appeal? First. Second, the DCFS report is hearsay. It is statements of witnesses interviewed by some DCFS worker who is not a judge, who is not a lawyer, and Lord knows what her qualification is, and certainly a circumstance in which Matt is deprived of any opportunity to cross-examine the witnesses she allegedly interviewed. Next, we don't have any idea who she even interviewed, for heaven's sakes, in terms of relevance. So it simply is remarkable that we could assert, or that he could assert, that there is under any circumstances anything about that DCFS report that wasn't compiled at the time Judge Dinn decided what he was doing that would in any way add to this case. Secondly, I want to get back to Dr. Klipper. The statute that we've cited makes it very clear, and the cases we've cited, and I would refer the court to our brief in Part E, that the statute 607.6 precludes under any circumstances, no matter what, the admission of anything obtained in counseling in evidence in any administrative or judicial proceeding. The point is to maintain the confidentiality of the counseling. As we have indicated in the brief, there is one case by the appellate court which has addressed this issue. It's the noise case which appears at page 46 of our brief. There is no other case which has addressed it, but the language of the statute is very clear that in subparagraph D, it's not limited to court-appointed counsel. It refers to all counseling sessions. So Dr. Klipper's allowed to testify to that was in clear violation of that counsel, of that statute, and in clear violation of the court's holding in the noise case. The other thing that I guess I'm left with here is he talks about some 2017 OP case. I simply asked the court to look at the record in this case. No order of protection was entered in 2017, and if he says there was, let him cite to you the pages where it's filed. There's no order of protection from 2017. Next, the sole and only issue before the court today is not what happened in 2017. It's whether on January 20th, 2020, an event happened between Matt and his mother, which in some way would have amounted to abuse of the child. The sole and only people who would know anything about that were the three adults there and Parker. And the other thing that we have to get to that counsel forgot to mention to you is, and this is the unrebutted testimony of Dr. Kosmicki, is that Parker is so allied with Jennifer. He will say anything or do anything that Jennifer wants him to do because he has a clear history of his getting secondary gain from doing it. And, you know, those points, which were clearly made by Dr. Kosmicki, which were totally ignored by Judge Dan, but which are unrebutted, were not even in any serious way addressed by counsel. And I guess the point that we should make here is that you simply cannot pre-assume that the world didn't exist before January 20th of 2020. We have a long history of Jennifer Hoy stating and acting and doing anything she can do to undermine Matt's relationship and his ability to have a relationship with the child. In the instant case, the evidence establishes this is just one more occasion of her doing that, as Dr. Kosmicki predicted she would do. Thank you, counsel. The court will take the matter under advisement and issue its disposition.